JN/ABS:MGD
F. #2020R00432

\*\*\*FILED\*\*\*

5:17 pm, Mar 15, 2021

U.S. DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

    - against -

ROBERT SABET,

                Defendant.

– – – – – – – – – – – – – – – X

INDICTMENT

**1:21-cr-00140 (EK)(VMS)**

Cr. No. _____

(T. 18, U.S.C., §§ 982(a)(1),
982(a)(7), 982(b)(1), 371, 1349,
1957(a), 1957(b), 2 and 3551 et
seq.; T. 21, U.S.C., § 853(p))

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

At all times relevant to this Indictment, unless otherwise indicated:

I.    <u>Background</u>

    A.    <u>The Medicare and Medicaid Programs</u>

        1.    The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

        2.    Medicare was divided into multiple parts. Medicare Part D provided prescription drug coverage to persons who were eligible for Medicare.

        3.    The New York State Medicaid program ("Medicaid") was a federal and state health care program providing benefits to individuals and families who met specified

financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing the Medicaid program in participating states, including New York. Individuals who received benefits under Medicaid were similarly referred to as Medicaid "beneficiaries."

4.     In New York State, the Medicaid program provided coverage to its beneficiaries for prescription drugs. Medicaid beneficiaries could obtain their prescription drug benefits from pharmacies either through "fee-for-service" enrollment or through Medicaid Managed Care plans, which were administered by private insurance companies that were paid by Medicaid.

5.     As part of their insurance benefits, some Medicare and Medicaid beneficiaries received a certain amount of credit per month that could be spent on eligible over-the-counter ("OTC") non-prescription items such as analgesics, diabetes supplies, antihistamines, weight management supplies, sleep aids, vitamins, toothpaste, durable medical equipment and other items. OTC money could not be spent on items such as cosmetics, hair care products, dry-skin lotions and perfumes. The monthly OTC credit was pre-loaded onto debit cards known as "over-the-counter cards" or "OTC Cards," which were issued to beneficiaries by the plan sponsors. Any funds that were not used by the end of the month were forfeited, and the OTC Cards were reloaded each month with refreshed funds. Pharmacies generally dispensed OTC benefits to beneficiaries by swiping the OTC Cards, like debit cards, through an electronic payment system.

6.     Medicare and Medicaid each qualified as a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

B.    The Defendant and Relevant Entities

7.    The defendant ROBERT SABET was a pharmacist who was licensed by the State of New York and resided in Brooklyn, New York.

8.    Bobbyrock Inc. d/b/a Brooklyn Chemists ("Brooklyn Chemists") was a pharmacy located in Brooklyn, New York. The defendant ROBERT SABET was the sole owner and supervising pharmacist ("SP") of Brooklyn Chemists since approximately September 2016.

9.    Curative Inc. d/b/a Lucky Care ("Lucky Care") was a pharmacy located in Flushing, Queens, New York. The defendant ROBERT SABET was the sole owner of Lucky Care since in or about December 2019. Lucky Care maintained a bank account ending in 1629 under the name Curative Inc. (the "Curative Account") at Bank-1, an entity the identity of which is known to the Grand Jury. SABET was the sole signatory on the Curative Account.

II.    The Health Care Fraud Scheme and Kickbacks

10.    From in or about and between September 2016 to the present, the defendant ROBERT SABET, together with others, agreed to execute and executed a fraudulent scheme at Brooklyn Chemists and Lucky Care (together, the "Pharmacies") by which claims were submitted and caused to be submitted to Medicare and Medicaid for the dispensing of pharmaceutical and OTC products even though such services were not provided as billed, were procured by kickbacks and otherwise did not qualify for reimbursement.

11.    In particular, the defendant ROBERT SABET, together with others, agreed to pay and caused to be paid kickbacks and bribes to customers in exchange for the ability to bill their insurance for pharmaceutical products that were either never dispensed or not requested by the customers, and for access to the stored value on customers' OTC Cards. SABET, together with others, agreed to submit and caused to be submitted false and fraudulent

3

claims to Medicare and Medicaid for (a) prescription drugs dispensed to customers that were not eligible for payment by Medicaid and Medicare because, <u>inter alia</u>, they were dispensed in connection with the payment of kickbacks and bribes, and (b) prescription drugs that were never dispensed to customers.

12.     In furtherance of the scheme, the defendant ROBERT SABET did and agreed with others to do the following, among other things:

(a)     billed Medicare and Medicaid for expensive name brand pharmaceuticals when, in reality, the Pharmacies either dispensed low cost generic versions of such pharmaceuticals or did not dispense any pharmaceuticals at all;

(b)     billed Medicare and Medicaid for pharmaceuticals that had not actually been prescribed to the beneficiaries, or had been prescribed in connection with the payment of kickbacks and bribes;

(c)     billed Medicare and Medicaid for prescription refills that had not been requested by beneficiaries and that were not actually dispensed; and

(d)     billed Medicare and Medicaid for prescription and OTC products in connection with bribes and kickbacks paid to beneficiaries and physicians.

13.     In furtherance of the scheme, the defendant ROBERT SABET regularly billed Medicaid, and caused Medicaid to be billed, for the dispensing of Nascobal, a vitamin B-12 nasal spray, that customers neither wanted nor needed.  Further, in many instances, SABET did not actually dispense the Nascobal.  Certain of the Nascobal prescription orders dispensed as part of the scheme were obtained as a result of kickbacks and bribes paid to physicians.

14.     In all, in or about and between September 2016 and December 2020, Brooklyn Chemists was paid over $4,000,000 by Medicaid for the purported dispensing of

4

Nascobal. In or about and between December 2019 and December 2020, Lucky Care was paid over $200,000 by Medicaid for the purported dispensing of Nascobal. A significant majority of the Nascobal claims from both Pharmacies were fraudulently submitted in furtherance of the scheme.

15.     In order to generate business and retain customers at the Pharmacies, the defendant ROBERT SABET agreed with employees at both Pharmacies to pay bribes and kickbacks to customers in exchange for, inter alia, (1) filling their regular prescriptions at the Pharmacies, (2) permitting the Pharmacies to swipe their OTC Cards for ineligible expenses, and (3) permitting the Pharmacies to bill Medicare and Medicaid under their names for medications they neither needed nor received.

16.     At Lucky Care, the defendant ROBERT SABET and his employees paid approximately $8,000 per month in cash kickbacks and bribes to customers in exchange for permitting Lucky Care to transfer the customers' Medicare- and Medicaid-provided OTC credit into Lucky Care's bank accounts. In addition, SABET agreed with his employees to compensate customers for filling prescriptions at Lucky Care by providing them with store credit that could be redeemed for goods or for grocery store coupons. In all, well over half of Lucky Care's customers were paid kickbacks and bribes in connection with seeking services at Lucky Care.

17.     The defendant ROBERT SABET regularly exchanged text messages with employees of Lucky Care regarding cash kickbacks. For example, when Lucky Care's employees required additional cash to pay kickbacks to customers, they often sent text messages to SABET asking for the cash. As another example, on multiple occasions SABET exchanged text messages with his employees regarding the purpose of making cash payments to customers.

5

18.     The defendant ROBERT SABET, together with others, submitted and caused to be submitted numerous reimbursement claims to Medicare and Medicaid in connection with kickbacks and bribes paid to customers.  Medicare and Medicaid, in turn, reimbursed Lucky Care for the claims submitted and caused to be submitted by SABET and others in connection with kickbacks and bribes.

19.     In or about the summer of 2020, the defendant ROBERT SABET became aware that his billing practices were under investigation by New York State regulatory officials. In particular, employees at the Pharmacies reported to SABET that customers had been contacted by law enforcement in an effort to verify the Pharmacies' prescribing records.  SABET directed his employees to respond by telling customers that any prescriptions the customers did not recognize were mistakes.  He further directed his employees to take measures to placate the customers and prevent them from speaking to regulators, including, but not limited to, instructing the employees to endeavor to retain any written inquiries from regulators that the customers showed the employees so that the customers would not respond to the inquiries.  In addition, SABET, together with others, altered the Pharmacies' records to reverse certain of the insurance claims about which customers had been contacted by regulators.

III.     Unlawful Financial Transactions

20.     A review of Medicare and Medicaid records for Lucky Care revealed that, between December 2019 and January 2021, more than $2,000,000 in claims paid by Medicare and Medicaid constituted fraudulent proceeds, which funds were deposited into the Curative Account at Bank-1, which was controlled by the defendant ROBERT SABET.  For example, in or about and between October 1, 2020 and December 3, 2020, Medicare and Medicaid deposited

over $500,000 in reimbursement claims into the Curative Account, some or all of which were fraudulently obtained.

21.     On or about December 3, 2020, the defendant ROBERT SABET caused $97,500 to be wired from the Curative Account to an automobile dealership in partial payment for a 2020 model Porsche Taykan, Vehicle Identification Number WP0AC2Y10LSA73062.

## COUNT ONE
### (Conspiracy to Commit Health Care Fraud)

22.     The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

23.     In or about and between September 2016 and present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ROBERT SABET, together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud Medicare and Medicaid, health care benefit programs, as that term is defined under Title 18, United States Code, Section 24(b), and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, Medicare and Medicaid, in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
### (Conspiracy to Pay Kickbacks)

24.     The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

7

25.    In or about and between December 2019 and present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ROBERT SABET, together with others, did knowingly and willfully conspire to offer and pay kickbacks, directly and indirectly, overtly and covertly, in cash and in kind, to persons to induce the purchase, lease and order, and to arrange for and recommend purchasing, leasing and ordering items and services for which payment may have been made in whole and in part under Medicare and Medicaid, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(B).

26.    In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant ROBERT SABET, together with others, committed and caused the commission of, among others, at least one of the following:

OVERT ACTS

(a)    On or about June 1, 2020 at approximately 4:39 p.m., SABET sent a text message to Employee-1, an individual whose identity is known to the Grand Jury, asking, in sum and substance, whether there was cash available at Lucky Care to pay kickbacks and bribes.

(b)    On or about June 1, 2020 at approximately 4:40 p.m., Employee-1 sent a text message to SABET informing him, in sum and substance, that the cash available to pay kickbacks and bribes was running low.

(c)    On or about June 1, 2020 at approximately 4:40 p.m., SABET sent a text message to Employee-1 informing Employee-1, in sum and substance, that SABET would bring additional cash to Lucky Care.

(d)    On or about June 18, 2020 between approximately 5:46 a.m. and 11:09 a.m., Employee-1 sent several text messages to SABET notifying him, in sum and

substance, that Employee-1 had purchased grocery store coupons in the amount of $5,000, and noting that Lucky Care customers could obtain the coupons by redeeming Lucky Care store credit that they had received as a bribe and kickback for filling their prescriptions at Lucky Care.

(e)      On or about June 25, 2020 between approximately 1:23 p.m. and 1:26 p.m., SABET sent several text messages to Employee-2, an individual whose identity is known to the Grand Jury, regarding the purpose of the kickback payments.

(f)      On or about June 25, 2020 between approximately 1:27 p.m. and 1:32 p.m., Employee-2 sent several text messages to SABET regarding the purpose of the kickback payments.

(g)      On or about June 25, 2020 at approximately 1:33 p.m., SABET sent a text message to Employee-2 regarding the purpose of the kickback payments.

(h)      On or about July 9, 2020 at approximately 7:02 a.m., SABET sent a text message to Employee-1 stating that he had left "5,000 OTC CASH" inside a drawer at Lucky Care.

(i)      On or about July 20, 2020 at approximately 1:45 p.m., SABET sent a text message to Employee-1 stating that he had placed $5,000 "for OTC cash" inside a drawer at Lucky Care.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

### COUNT THREE
(Engaging in Unlawful Monetary Transaction)

27.      The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

28.      On or about December 3, 2020, within the Eastern District of New York and elsewhere, the defendant ROBERT SABET, together with others, did knowingly and

intentionally engage and attempt to engage in a monetary transaction, in and affecting interstate

commerce, in criminally derived property that was of a value greater than $10,000 and that was

derived from specified unlawful activity, to wit: health care fraud, in violation of Title 18, United

States Code, Section 1347, knowing that the property involved in such monetary transaction

represented the proceeds of some form of unlawful activity, to wit: a wire transfer in the amount

of $97,500 from the Curative Account to an automobile dealership in exchange for the purchase

of a 2020 model Porsche.

(Title 18, United States Code, Sections 1957(a), 1957(b), 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION<br>AS TO COUNTS ONE AND TWO

29.    The United States hereby gives notice to the defendant that, upon his

conviction of either of the offenses charged in Counts One and Two, the government will seek

forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any

person convicted of a federal health care offense to forfeit property, real or personal, that

constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission

of such offenses.

30.    If any of the above-described forfeitable property, as a result of any act or

omission of the defendant:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided

without difficulty;

10

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## <u>AS TO COUNT THREE</u>

31.     The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real and personal, involved in such offense, or any property traceable to such property, including, but not limited to, a 2020 Porsche Taykan, Vehicle Identification Number WP0AC2Y10LSA73062.

32.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

11

property of the defendant up to the value of the forfeitable property described in this forfeiture

allegation.

        (Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United

States Code, Section 853(p))

                                A TRUE BILL

                                FOREPERSON

SETH D. DUCHARME
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK


DANIEL KAHN
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

F.#: 2020R00432

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

### ROBERT SABET,

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 982(a)(7), 982(b)(1), 371, 1349, 1957(a),
1957(b), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p))

*A true bill.*

_____

*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

*Clerk*

*Bail, $* _____

**Miriam L. Glaser Dauermann, Trial Attorney (718) 254-7575**